IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 3:13-27 |
| | ) | |
| STEPHEN EDWARD WEAVER, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER OF COURT

I.    SYNOPSIS

Pending before the Court is Defendant's motion to suppress evidence and statement (ECF No. 32). Defendant asserts that the police unlawfully searched his home and unlawfully obtained his statement in violation of the United States Constitution. For the reasons explained below, the Court will **DENY** Defendant's motion.

II.    BACKGROUND

This matter arises from a search of Defendant's garage conducted without a warrant on June 5, 2011, and a statement given by Defendant to police on June 7, 2011. During the search, police seized evidence related to several pipe bombs found in Defendant's garage. In the statement he gave to the police, Defendant acknowledged ownership of the bombs and explained that he had constructed them to use for fishing.

On July 9, 2013, Defendant was indicted on one count of possession of unregistered destructive devices, in violation of 26 U.S.C. 5861(d). (*See* ECF No. 1). The Indictment charges that on or about June 5, 2011, Defendant knowingly and unlawfully possessed destructive devices, as defined in 26 U.S.C. §§ 5845(a)(8) and 5845(f), which

were not registered to him in the National Firearms Registration and Transfer Record, specifically, two (2) pipe bombs. (*Id.* at 1). On August 15, 2013, Defendant was arraigned and pled not guilty. (*See* ECF Nos. 12, 13).

On October 24, 2013, Defendant filed a motion to suppress both the evidence seized from his garage during the search and the statement he gave to police. (ECF No. 32). The Government filed a response on December 9, 2013. (ECF No. 39).

Regarding the search and seizure of evidence from his garage, Defendant claims that the police did not obtain a warrant authorizing the search, did not have probable cause to search, and did not have Defendant's consent to search. (ECF No. 32, at 1). In response, the Government argues that Defendant's wife, who was a lawful owner of the garage, consented to the search in Defendant's absence. Alternatively, the Government argues that exigent circumstances justified the search, given the danger to the public posed by the bombs. (ECF No. 39, at 4-5). Regarding the statement, Defendant claims that the police coerced the statement. (ECF No. 32, at 2). The Government counters that Defendant waived his rights and voluntarily gave his statement. (ECF No. 39, at 7-9).

On April 15, 2014, the Court held a suppression hearing on Defendant's motion. At the hearing, the Government introduced the following into evidence: (1) the testimony of Donna Weaver; (2) the testimony of Trooper Cameron Craig; (3) the testimony of Corporal Matthew Strange; (4) the testimony of ATF Special Agent Kelley Hoover; and (5) the statement of rights and waiver form signed by Defendant (Gov't Ex. No. 1). Defendant's counsel cross-examined Mrs. Weaver and Agent Hoover, and offered into evidence the testimony of Trooper Terry Summers.

III. **FINDINGS OF FACT**

The Court makes the following findings of fact based on the evidence and testimony presented at the suppression hearing.

1. The Indictment in this case charges Defendant with the unlawful possession of a destructive device on or about June 5, 2011.

2. At that time, Defendant and his wife, Donna Weaver, were estranged.[1]

3. Defendant resided at the marital home, while Mrs. Weaver resided elsewhere.

4. However, the martial home was still jointly owned by Mrs. Weaver and Defendant, and Mrs. Weaver was named on the mortgage, the deed, the utility bills, and the home insurance, although she did not pay any of the bills.

5. On June 2, 2011, Defendant was arrested and detained on state criminal charges unrelated to this case.

6. On June 5, 2011, because of Defendant's incarceration, Mrs. Weaver went to the marital home, along with Carl Burkheimer, to secure the home[2] and to retrieve pets that were living in the home.

7. While at the home on June 5, 2011, Mr. Burkheimer and Mrs. Weaver discovered what they believed were pipe bombs in the garage.

8. Mrs. Weaver immediately contacted the Pennsylvania State Police to report that she had found suspected pipe bombs in the garage of the residence.

---

[1] Mrs. Weaver testified that she and Defendant began living separately in July 2007, but did not finalize the divorce until March 24, 2014.

[2] Mrs. Weaver testified that she needed to board up the windows and doors because they had been damaged during a police standoff involving Defendant.

9. Police officers, including Trooper Cameron Craig, responded to the call.

10. After the police officers arrived at the home, Mrs. Weaver led them to the garage and showed them where the bombs were located.

11. The responding officers then called the Hazardous Device and Explosives Team and cleared the area, evacuating residents from the neighboring homes.

12. Upon searching the garage, the Hazardous Device and Explosives Team found ten pipe bombs, of which nine were complete and one was incomplete.

13. The Hazardous Device and Explosives Team initiated procedures to render the devices safe.

14. Two of the devices were rendered safe, and officers collected the pipes, powder samples, and rounds from those two devices into evidence.

15. The Hazardous Device and Explosives Team destroyed the remaining devices in a nearby field.

16. Subsequent testing of the seized materials confirmed that the devices were explosive bombs.

17. On June 7, 2011, ATF Special Agent Kelley Hoover and Trooper Terry Summers interviewed Defendant at the State Police Barracks in Bedford, Pennsylvania, regarding the pipe bombs recovered from Defendant's garage.

18. At the start of the interview, Agent Hoover advised Defendant of his rights.

19. Agent Hoover provided Defendant with a statement of rights and waiver form, which Defendant reviewed and signed, stating that he was willing to talk with Agent Hoover and Trooper Summers.

20. The interview lasted less than two hours, during which Defendant admitted to building the devices.

## IV.   CONCLUSIONS OF LAW

The Court will separately address (1) the search and seizure of evidence from Defendant's garage and (2) Defendant's statement to the police.

### A.   Search and Seizure of Evidence

Defendant asserts that the police illegally searched his garage and seized evidence in violation of the United States Constitution.  The Fourth Amendment provides

> [T]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated, and no warrants shall issue, but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized.

U.S. Const. amend. IV.  Under the Fourth Amendment, warrantless searches of a home are presumptively unreasonable.  *Payton v. New York*, 445 U.S. 573, 585-90 (1980) (noting that the Fourth Amendment "has drawn a firm line at the entrance to the house"); *Kyllo v. United States*, 533 U.S. 27, 30 (2001).  However, a warrantless search may be lawful if (1) an officer is given consent to search, *see Davis v. United States*, 328 U.S. 582 (1946), or (2) there is probable cause to search and exigent circumstances, *see Payton*, 445 U.S. 573.

#### 1.   Mrs. Weaver's Consent to Search

Here, it is undisputed that the police did not have a search warrant.  Instead, the Government argues that the search is valid based on Mrs. Weaver's consent.  A warrantless search is reasonable if the police obtain the consent of a person who is

authorized to give it. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *United States v. Matlock*, 415 U.S. 164 (1974). In *United States v. Drayton*, the Supreme Court explained:

> In a society based on law, the concept of agreement and consent should be given a weight and dignity of its own. Police officers act in full accord with the law when they ask citizens for consent. It reinforces the rule of law for the citizen to advise the police of his or her wishes and for the police to act in reliance on that understanding. When this exchange takes place, it dispels inferences of coercion.

536 U.S. 194, 207 (2002). Nevertheless, a court must carefully consider the circumstances under which consent is obtained. *United States v. Parson*, 599 F. Supp. 2d 592, 601-02 (W.D. Pa. 2009). Consent is a "jealously and carefully drawn exception" to the Fourth Amendment rule, which ordinarily prohibits "the warrantless entry of a person's house as unreasonable per se." *Georgia v. Randolph*, 547 U.S. 103, 109 (2006). The Government has the burden of proving by a preponderance of evidence that the consent was valid. *Schneckloth*, 412 U.S. at 222.

This case involves third party consent. Consent may be given either by the defendant or by some other person who has common authority over the premises to be searched. *Matlock*, 415 U.S. at 171. Indeed, "[t]he Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." *Randolph*, 547 U.S. at 106; (citing *Illinois v. Rodriguez*, 497 U.S. 177 (1990)). The Supreme Court has consistently upheld the principle that "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting

person with whom that authority is shared." *Fernandez v. California*, 134 S. Ct. 1126, 1133 (2014) (quoting *Matlock*, 415 U.S. at 170).

In general, courts have found that an estranged spouse who resides somewhere other than the marital home may still possess authority to consent to a search of the marital home, if, under the circumstances, the consenting spouse retains a sufficient relationship to the marital home. *See, e.g., United States v. Shelton*, 337 F.3d 529, 534 (5th Cir. 2003); *United States v. Backus*, 349 F.3d 1298, 1305 (11th Cir. 2003); *United States v. Gevedon*, 214 F.3d 807, 811 (7th Cir. 2000); *United States v. Trzaska*, 859 F.2d 1118, 1120 (2d Cir. 1988); *United States v. Crouthers*, 669 F.2d 635, 642-43 (10th Cir. 1982); *United States v. Long*, 524 F.2d 660, 661 (9th Cir. 1975). "Mutual use of property, or joint access or control of property, is generally sufficient." *Trzaska*, 859 F.2d at 1120.

Here, the Government has met its burden of showing that Mrs. Weaver voluntarily consented to the entry of Defendant's garage. Mrs. Weaver called police and asked them to come to the home, explaining that she had discovered bombs in the garage. Mrs. Weaver led police to the garage and showed police where the bombs were located. Mrs. Weaver testified at the suppression hearing that she gave the police permission to search the garage. Mrs. Weaver was a legal owner of the home, and, at the time of the search, had access to and control of the property. Specifically, Mrs. Weaver testified that she was at the home because she needed to secure the home due to Defendant's incarceration and to take care of the pets that were in the home. Accordingly, she had actual authority to consent to the search.

Furthermore, even if Mrs. Weaver did not have the actual authority to consent to the search, it was objectively reasonable for the police officers to believe that she could give consent. The apparent authority of Mrs. Weaver to give consent is sufficient to immunize the search from constitutional attack. *See United States v. Meada*, 408 F.3d 14, 21 (1st Cir. 2005). Trooper Cameron Craig testified that the police responded to the home because of Mrs. Weaver's call and entered the garage only after Mrs. Weaver gave them permission. Trooper Craig further testified that he believed Mrs. Weaver owned the home. Thus, under the totality of the circumstances in this case, it was objectively reasonable for the police to believe that Mrs. Weaver retained ownership and mutual use of the property and could thus consent to the search. *Id*.; *United States v. Nichols*, 574 F.3d 633, 636 (8th Cir. 2009) ("A search is justified without a warrant where officers reasonably rely on the consent of a third party who demonstrates apparent authority to authorize the search, even if the third party lacks common authority.").

Having carefully reviewed the testimony and evidence in the record, the Court finds that Mrs. Weaver gave valid consent to search the home. Accordingly, Defendant's motion to suppress physical evidence will be denied.

### 2.    Exigent Circumstances

Even if Mrs. Weaver's consent was not a valid basis to support the search of Defendant's garage, the evidence obtained during the search would nevertheless be admissible under the exigent circumstances exception to the warrant requirement.

Warrantless searches and seizures inside a home are presumptively unreasonable unless "probable cause *and* exigent circumstances exist to justify the intrusion." *United States v. Coles*, 437 F.3d 361, 365 (3d Cir. 2006). Exigent circumstances include hot pursuit of a suspected felon, the possibility that evidence may be removed or destroyed, and danger to the lives of officers or others. *Id.* at 366 ("In these limited situations, the need for effective law enforcement trumps the right of privacy and the requirement of a search warrant, thereby excusing an otherwise unconstitutional intrusion."); *United States v. Rubin*, 474 F.2d 262, 268 (3d Cir. 1973)

In determining whether there were exigent circumstances, a court must review the facts and the reasonably discoverable information available to the police at the time of the search under the totality of the circumstances facing them. *Estate of Smith v. Marasco*, 318 F.3d 497, 518 (3d Cir. 2003). The Government bears the burden of proving by a preponderance of the evidence that exigent circumstances existed for the warrantless action. *See Sharrar v. Felsing*, 128 F.3d 810, 820 (3d Cir. 1997); *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984).

In the present case, police officers responded to a call from Mrs. Weaver regarding pipe bombs found in Defendant's garage. When the officers arrived at Defendant's home, Mrs. Weaver explained that she had discovered pipe bombs in the garage and led the officers to the garage and pointed to the bombs. Mrs. Weaver gave the officers permission to enter the garage. The officers visually observed the bombs and immediately called the Hazardous Device and Explosives Team. The officers asked Mrs. Weaver to leave the area and evacuated residents from neighboring homes. Under these circumstances, both

probable cause and exigent circumstances were present such that the officers could reasonably believe that the bombs posed a danger to the lives of the officers and to the individuals living in nearby homes.

Accordingly, the Government has demonstrated that, under the circumstances, exigent circumstances existed to justify an immediate, warrantless search and seizure of the bombs. Therefore, because exigent circumstances existed to justify a warrantless search and seizure to neutralize the danger posed by the explosive devices, Defendant's motion to suppress the physical evidence will be denied.

**B.     Defendant's Statement**

Defendant also seeks to suppress the statement he gave to police. A few days after the search of Defendant's garage, Defendant consented to an interview with the police. Defendant now claims that the police improperly coerced his statement in violation of his Constitutional rights. (ECF No. 32 at 3). Defendant asserts, "the interrogation was based upon an earlier interrogation about other criminal matters while the defendant was under the influence of a gas attack by the Pennsylvania State Police, was without food and had not slept in days." (*Id.*).

The law concerning the voluntariness of a statement is well settled. The Third Circuit has explained:

> [A] statement is involuntary when the suspect's "will was overborne in such a way as to render his confession the product of coercion." In determining whether a statement is voluntary, Supreme Court precedent requires consideration of "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." These surrounding circumstances include "not only the

crucial element of police coercion," but may also include "the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health."

*Lam v. Kelchner*, 304 F.3d 256, 264 (3d Cir. 2002) (citations omitted); *see also Rhodes v. Winstead*, No. 2:05-cv-1515, 2010 WL 936763, *2 (W.D. Pa. Mar. 9, 2010). The Court must evaluate the voluntariness of the statement "based on the totality of the circumstances to determine whether 'the confession was the product of an essentially free and unconstrained choice by its maker, that it was the product of a rational intellect and a free will and that the [defendant's] will was not overborne.'" *United States v. Lenegan*, 425 F. App'x 151, 153 (3d Cir. 2011) (quoting *United States v. Swint*, 15 F.3d 286, 289 (3d Cir. 1994)).

The crucial factor in this voluntariness inquiry is that of police coercion—to find that a statement was involuntary, a court must conclude that it was the product of "police overreaching." *See Swint*, 15 F.3d at 289. While police officers may use psychological tactics to obtain a confession, the Court must ensure that the tactics employed "were not so manipulative or coercive that they deprived [the suspect] of his ability to make an unconstrained, autonomous decision to confess." *United States v. Griggie*, 105 F. App'x 431, 425 (3d Cir. 2004). The Government bears the burden of proving by a preponderance of the evidence that Defendant's statement was voluntary. *Swint*, 15 F.3d at 289.

Considering the totality of the circumstances of the instant case, the Court concludes that the Government has met its burden and that the objective circumstances of Defendant's interview show that his statement was voluntary. *United States v. Waxman*, 572 F. Supp. 1136, 1153 (E.D. Pa. 1983) *aff'd*, 745 F.2d 49 (3d Cir. 1984). While the Court

will address the characteristics of the accused and the details of the interrogation below, "there is simply no evidence in the record to indicate any degree of coercion beyond the most basic police interrogation techniques." *Sweet v. Tennis*, 386 F. App'x 342, 348 (3d Cir. 2010). The police officers advised Defendant of his rights and administered *Miranda* warnings prior to the interview. Likewise, the officers provided Defendant with a statement of his rights, which he reviewed, and a waiver, which Defendant willingly signed. (*See* ECF No. 39-2).

The Defendant's characteristics support a finding that the statement was voluntary. At the time of the interview, Defendant was 53 years old. The officers testified that Defendant was cooperative and coherent. Furthermore, there is no evidence that Defendant suffers from any medical, physical, or mental impairment that would cast doubt upon the voluntariness of his statement.

The details of the interview also support a finding that Defendant's statement was voluntary. The interview lasted less than two hours. Only two officers participated in the interview. The interview took place in a room at the Pennsylvania State Police Barracks in Bedford at a table with six chairs. The officers testified that they never brandished their weapons. Defendant was cooperative and stated that he was willing to waive his rights and give a statement. The officers conducted the interview in a normal, conversational tone. Agent Hoover testified that the conversation was mild and never became confrontational. Defendant never asked for his attorney, never stated he wished to stop talking, and never asked for a break.

In sum, the circumstances surrounding the interrogation demonstrate that the officers employed appropriate investigative procedures and did not engage in overreaching or coercive tactics. Agent Hoover and Officer Summers advised Defendant of his rights and conducted a relatively brief interview. Defendant knowingly and voluntarily waived his rights. Defendant's will was not overborne nor was his statement coerced.

Defendant contends that his statement was coerced because the interview at issue in this case followed another interview, not related to this case, which allegedly took place while Defendant was "under the influence of a gas attack" and while Defendant was "without food and had not slept in days." (ECF No. 32 at 3). Defendant had been interviewed by police on June 1, 2011, regarding an unrelated state criminal charge. This first interview appears to have taken place the day after a standoff between Defendant and police in relation to the state criminal matter. However, Defendant's attempt to connect the two interviews as evidence of coercion is without merit for several reasons.

First, the two interviews were completely unrelated. The first interview involved state criminal rape charges while the second interview involved the federal charges in the instant case. Second, the two interviews were separated by almost a week. Third, there is no evidence that, during the intervening time between the two interviews, Defendant was deprived of food, drink, or sleep, or that he was subject to any "gas" administered by the police. Thus, any deficiencies with the first interview are sufficiently attenuated such that the second interview, related to the instant case, was unaffected by those problems.

Accordingly, taken as a whole, the objective circumstances demonstrate that the officers acted in a professional manner and conducted an appropriate interview and that Defendant's statement was voluntary and not the product of police coercion. *See United States v. Jacobs*, 431 F.3d 99, 108 (3d Cir. 2005). Therefore, because Defendant's statements were voluntary and not the product of coercion, Defendant's motion to suppress the statement will be denied.

**V.      CONCLUSION**

For the reasons stated above, Defendant's motion to suppress evidence and statement (ECF No. 32) is **DENIED**. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **CRIMINAL NO. 3:13-27** |
| | ) | |
| **STEPHEN EDWARD WEAVER,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **Defendant.** | ) | |

## ORDER

AND NOW, this __28th__ day of April 2014, having considered Defendant's motion

to suppress evidence and statement, and the Government's response, and for the reasons

set forth in the attached memorandum,

**IT IS HEREBY ORDERED** that Defendant's motion to suppress (ECF No. 32) is

**DENIED**.

BY THE COURT:

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**